**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
TRUSTEES OF THE METAL POLISHERS LOCAL
8A-28A FUNDS, and INTERNATIONAL UNION
OF PAINTERS AND ALLIED TRADES METAL
POLISHERS, PRODUCTION AND NOVELTY
WORKERS LOCAL UNION 8A-28A, DISTRICT
COUNCIL NO. 9, IUPAT, AFL-CIO,

<table>
<tr><td style="text-align:center">Plaintiffs,</td><td style="text-align:center"><b><u>REPORT AND RECOMMENDATION</u></b></td></tr>
<tr><td style="text-align:center">-against-</td><td style="text-align:center"><b>24-cv-5192-DG-ST</b></td></tr>
</table>

LEGACY RESTORATION METAL STONE
WOOD, LLC,

                                        Defendant.
--------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

      Trustees of the Metal Polishers Local 8A-28A Funds (the "Trustees"), and the International

Union of Painters and Allied Trades Metal Polishers, Production and Novelty Workers Local

Union 8a-28a, District Council No. 9, IUPAT, AFL-CIO (the "Union" and together with Trustees,

"Plaintiffs"), sued Legacy Restoration Metal Stone Wood LLC ("Defendant") for breach of a labor

contract, and violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and

the Labor Management Relations Act ("LMRA"). Plaintiffs' action seeks damages arising from

Defendant's alleged failure to make contributions to employee benefit funds, as well as an order

requiring Defendant to permit and cooperate in an audit of Defendant's books and records.

Presently before this Court is Plaintiffs' Motion for Default Judgment (the "Motion"). For the

reasons below, this Court respectfully recommends that the District Court GRANT the Motion.

**BACKGROUND**

## I.    FACTUAL ALLEGATIONS[1]

The Union is a labor organization which represents employees in an industry affecting commerce.  Compl. ¶ 8, ECF No. 1.  The Union maintains an office in Queens, New York.  *Id.* ¶ 9.  The Trustees are fiduciaries of jointly administered, multi-employer labor management trust funds (the "Funds"), which are maintained by the Union and various employers in accordance with trade agreements and trust indentures.  *Id.* ¶ 5.  The Funds are employee benefit plans and multi-employer plans as defined in ERISA.[2]  *Id.*  They provide fringe benefits to eligible employees, retirees, and their dependents.  *Id.* ¶ 6.  They are also authorized to collect contributions from those employees' employers.  *Id.*  The Trustees, as the Funds' fiduciaries, can maintain suits as independent legal entities under ERISA, and must bring actions to enforce the provisions of the trade agreements and trust indentures that concern the protection of employee benefit rights.  *Id.*

Plaintiffs allege that Defendant is an "employer," within the meaning of ERISA, in an industry affecting commerce.  *See id.* ¶ 10.  Although Plaintiff claims that Defendant is a corporation, *see id.* ¶ 11, Defendant appears to, in fact, be a limited liability company.  *See id.* ¶ 10.  Plaintiff alleges that Defendant performs work in New York state, and is duly organized and existing under New York law.  *Id.* ¶ 11.  Defendant's last known places of business are in Brooklyn and New York, New York.  *Id.*

In 2020, Defendant and the Union entered a collective bargaining agreement (the "CBA"), which was in effect from June 1, 2019, until May 31, 2024.  *See* Ramaglia Aff. Ex. A. at Art. 41.

---

[1] This Court takes the following factual allegations from the Complaint, as well as documents integral to the Complaint and upon which the Complaint relies (which Plaintiffs have since submitted to the Court in support of the Motion). *See Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).  Those documents include the collective bargaining agreement, as well as the funds' policy for the collection of delinquent contributions.  *See* Ramaglia Aff. Ex. A, Ex. B., ECF Nos. 15–1–15-2.  This Court assumes that the facts alleged in the Complaint are true for purposes of the Motion.  *See Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6, 84 (2d Cir. 2009).

[2] *See* 29 U.S.C. §§ 1002(3), (37), 1132(d)(1), 1145.

The CBA automatically renews "for successive one-year periods unless either party serves written notice upon the other of its desire to terminate or amend [the CBA] by registered mail, at least thirty (30) days prior to the original expiration date or any renewal thereof." *Id.* Under the CBA, the parties are "bound by all actions taken by the Trustees of the Funds pursuant to the [CBA] and Declarations of Trust." *Id.* at Art. 19 ¶ 5. Plaintiffs contend that such provision of the CBA binds Defendant to the Funds' Policy for the Collection of Delinquent Contributions (the "Policy"). *See* Ramaglia Aff. ¶ 2; *id.* Ex. B.

According to the Complaint, under the CBA and/or "Trust Indenture," and/or the Policy, Defendant was required, during the relevant time period, to submit contribution reports setting forth the hours that employees worked and the amount in contributions due under the CBA's rate schedule. Compl. ¶ 13. Defendant was also required to remit such monetary contributions in accordance with the CBA and trust indenture. *Id.* Plaintiffs allege that, upon information and belief, "there became due and owing to the Funds from [Defendant] contribution reports and fringe benefit contributions." *Id.* ¶ 14. However, Defendant failed and refused to remit such "benefit contributions and/or union assessments" "in the minimum amount of $97,740.10 for the period July 1, 2019 through July 31, 2022," a number which Plaintiffs assert is based on an audit. *Id.* ¶¶ 15, 16.

The CBA also requires Defendant to permit and cooperate with the Funds in an audit of the Defendants' financial records "for the purpose of ascertaining whether the full amount of benefit contributions have been made to the Funds . . . ." *Id.* ¶ 24. To that end, Plaintiffs allege that Defendant failed and refused to allow a complete audit by the Funds for the period of July 1, 2019, through July 31, 2022. *Id.* ¶ 25.

## II.    PROCEDURAL HISTORY

Plaintiffs sued Defendant on July 25, 2024.  *See generally id.*  Defendant failed to answer the Complaint or otherwise appear in the case.  Accordingly, on September 25, 2024, Plaintiffs requested a certificate of default against Defendant.  *See* Request for Certificate of Default, ECF No. 6.  However, the Clerk of Court denied Plaintiff's request, as the request had failed to include a certificate of service showing that the required documents had been served on Defendant or mailed to Defendant's last known business address.  *See* Docket Entry, dated September 26, 2024.  On September 27, 2024, Plaintiffs renewed their request for a certificate of default (this time, including the requisite proof of service), which the Clerk of Court entered on October 1, 2024.  *See* Entry of Default, ECF No. 8.

On December 12, 2024, Plaintiffs filed a request for a sum certain default judgment, along with accompanying affidavits and documents supporting their request.  *See* Request for Sum Certain Default J., ECF No 10.  On December 13, 2024, the Clerk of Court notified Plaintiffs that, due to their request seeking attorneys' fees and other substantive relief, Plaintiffs could not request a sum certain default judgment.  *See* Notice, dated December 13, 2024.

On December 15, 2024, Plaintiffs filed a notice of motion for default judgment for the instant Motion.  *See* Notice of Mot. for Default J., ECF No. 16.  On December 17, 2024, the Honorable Diane Gujarati referred the Motion to this Court for report and recommendation.  *See* Order Referring Mot., dated December 17, 2024.  That same day, this Court ordered Plaintiffs to file a memorandum of law in compliance with Local Civil Rule 7.1.  *See* Docket Order, dated December 17, 2024; *see also* Loc. Civ. R. 7.1 (requiring motions to include, among other things, a "memorandum of law, setting forth the cases and other authorities relied on in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be

determined"). On December 19, 2024, Plaintiffs filed a memorandum of law in support of the Motion. *See* Pls.' Mem. Law in Supp., ECF No. 18.

## **LEGAL STANDARD**

Obtaining a default judgment is a two-step process. *See* Fed. R. Civ. P. 55. Step one is to obtain an entry of default from the Clerk of Court. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Step two is to seek default judgment. *See* Fed. R. Civ. P. 55(b). "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," the Clerk must, "on the plaintiff's request, with an affidavit showing the amount due . . . enter judgment for that amount and costs against a defendant . . . ." Fed. R. Civ. P. 55(b)(1). "In all other cases," a party must move for a default judgment before the court. Fed. R. Civ. P. 55(b)(2).

When a plaintiff moves for default judgment, the court must accept the complaint's well-pleaded factual allegations as true. *Finkel*, 577 F.3d at 84; *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint."). From there, the court must determine whether the facts alleged establish the defendant's liability as a matter of law. *Mickalis Pawn Shop*, 645 F.3d at 137. After all, "liability does not automatically attach from the well-pleaded allegations of the complaint, as it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F.Supp.2d 150, 153 (E.D.N.Y. 2010).

After determining that a defaulting party is liable, the court decides whether, and how much, to award in damages. *See Finkel*, 577 F.3d at 83 n.6 ("a default is not an admission of

damages"). The court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). To show entitlement to damages, the movant must show that the "compensation sought relates to the damages that naturally flow from the injuries pleaded." *Morales v. B&M Gen. Renovation Inc.*, 14-cv-7290 (MKB) (MDG), 2016 WL 1266624, at *2 (E.D.N.Y Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016) (citations omitted). The court can decide whether, and how much, to award in damages without an evidentiary hearing if "sufficiently detailed affidavits and documentary evidence" support the request for damages. *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, 15-cv-6505 (NGG), 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016).

## JURISDICTION & VENUE

### I.   SUBJECT MATTER JURISDICTION

Before granting a default judgment motion, "a court must first determine whether it has subject matter jurisdiction over the action." *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, 20-cv-150, 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021). Here, this Court has subject matter jurisdiction over Plaintiffs' ERISA and breach of a labor contract claims under 29 U.S.C. §§ 185(a), 1132(e)-(f), and 28 U.S.C. § 1331.

### II.   PERSONAL JURISDICTION

Before granting a motion for default judgment, a court may assure itself that it has personal jurisdiction over the defendant. *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("we agree with our sister circuits that before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant"). Here, while Plaintiffs do not make any arguments regarding personal jurisdiction, the Complaint

asserts, upon information and belief, that Defendant is a "foreign corporation performing work in the State of New York and duly organized and existing pursuant to the laws of the State of New York with its last known places of business at 7014 13th Avenue, Suite 202, Brooklyn, New York 11228 and 87 Ellwood Street, Suite 4L, New York, New York 10040." Compl. ¶ 11.

As mentioned, Defendant actually appears to be a limited liability company, rather than a corporation. *See id.* ¶ 10. Accordingly, as permitted under New York LLC Law § 303(a)(1), Plaintiffs effected service of process on Defendant by serving an authorized agent of the New York Secretary of State. *See* Summons Returned Executed, ECF No. 5. Although "serving a summons establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (cleaned up) (citing Fed. R. Civ. P. 4(k)(1)(A)), Plaintiffs do not, in their memorandum of law, brief the issue of whether Defendant, as a purportedly "foreign" company, is subject to this Court's jurisdiction.

This Court, however, reviews that question and finds that, despite Plaintiffs' assertion that Defendant is a "foreign" company, Defendant is actually a New York domestic limited liability company—according to the Department of State Division of Corporations[3]—a fact of which this Court can take judicial notice. *See Fair Housing Just. Ctr. Inc. v. Lighthouse Living LLC*, 20-cv-4066 (NSR), 2021 WL 4267695, at *4 (S.D.N.Y. Sept. 20, 2021) ("the Court may take judicial notice of the public Entity Information provided by the New York State Department of State, Division of Corporations Corporate and Business Entity Database." (cleaned up); *see also Reed Const. Data Inc. v. McGraw-Hill Cos., Inc.*, 638 Fed. App'x 43, 47 n.2 (2d Cir. 2016) (taking

---

[3] *See* N.Y. Dep't of State, Div. of Corps., Entity Information, https://apps.dos.ny.gov/publicInquiry/EntityDisplay (last visited Aug. 29, 2025).

judicial notice of business incorporation records contained on Georgia's Secretary of State website).

Accordingly, as Defendant is a New York limited liability company, and was properly served by Plaintiffs, this Court has personal jurisdiction over Defendant. *See Exhibition Emps. Loc. 829 I.A.T.S.E Pension Fund v. Nat'l Convention Servs., LLC*, 24-cv-7833 (MKV), 2025 WL 2253741, at *2 (S.D.N.Y. Aug. 7, 2025).

### III.    VENUE

An action to recover unpaid contributions under ERISA may be brought in the district where the plan is administered. 29 U.S.C. §§ 1132(e)(2), 1451(d). Because the Funds are administered in Queens, New York, *see* Compl. ¶ 7, venue in this District is appropriate.

### DISCUSSION

### I.    LOCAL RULES

The court will not grant a default judgment motion "unless the party making the motion adheres to *all* of the applicable procedural rules." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, 22-cv-1831 (PKC), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (citing *Century Surety Co. v. Adweek*, 16-cv-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)); *see Zaldivar v. Janl, Inc.*, 23-cv-1434 (NCM) (LGD), 2024 WL 4293326, at *4 (E.D.N.Y. Sept. 24, 2024), *report and recommendation adopted*, (E.D.N.Y. Nov. 13, 2024) ("Compliance with this Court's Local Rules is necessary to grant default judgment.").

Therefore, before granting a default judgment motion, courts in this District must ensure that the movant "took all the required procedural steps" under Local Civil Rules 55.2 and 7.1. *J & J Sports Prods., Inc. v. Vergara*, 19-cv-2382 (FB) (VMS), 2020 WL 1034393, at *2 (E.D.N.Y.

Feb. 6, 2020), *report and recommendation adopted*, 2020 WL 1031756 (E.D.N.Y. Mar. 3, 2020); *see Contino v. United States*, 535 F.3d 124, 126 (2d Cir. 2008) ("Local rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."). A movant's failure to do so warrants a motion's denial. *Mulligan Funding LLC v. Tommy Interior Contracting Corp.*, 23-cv-8808 (RER) (JAM), 741 F.Supp.3d 1, 12–13 (E.D.N.Y. July 23, 2024) ("'As harsh at it may seem,' courts in this district 'have repeatedly' denied motions for default judgment based on a movant's failure to adhere to Local Civil Rule[s]" (citations omitted)).

Here, in support of their Motion, Plaintiffs have filed a copy of the Complaint, the certificate of default, a statement of damages, the documents required under Local Civil Rule 7.1, and proof of mailing of the same to Defendant's last known business addresses. *See* Statement of Damages, ECF No. 11; Kugielska Aff., ECF No. 12; Azzopardi Aff., ECF No. 13; Moss Aff., ECF No. 14; Ramaglia Aff.; Notice of Mot.; Certificate of Serv., ECF No. 17; Mem. Law in Supp; Certificate of Serv., ECF No. 19. As such, Plaintiffs have complied with Local Civil Rule 55.2, which governs default judgments in this District. *See generally* Loc. Civ. R. 55.2.

## II.    STANDING

"ERISA vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." *Trs. of Loc. 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, 10-cv-322 (SJ) (ALC), 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), *report and recommendation adopted*, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011); *see* 29 U.S.C. § 1132(a)(3).

The LMRA provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."

29 U.S.C. § 185(a).  Unions and employee benefit funds thus have standing to sue under the LMRA.  *Metal Lathers Loc. 46 Pension Fund v. River Ave. Contracting Corp.*, 954 F. Supp. 2d 250, 256 (S.D.N.Y. 2013); *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 214 (S.D.N.Y. 2000).

Here, Plaintiffs have established their standing under both ERISA and the LMRA. The Trustees are "fiduciaries" within the meaning of ERISA.[4]  *See* Compl. ¶ 5. The Funds are multi-employer/employee benefit plans under ERISA.  *Id.*  Additionally, the Union is a labor organization representing employees in an industry affecting commerce.  *Id.* ¶ 8.  Accordingly, Plaintiffs have standing to bring their claims against Defendant.

## III.    LIABILITY

Plaintiffs allege that Defendant breached the CBA by: (1) failing to remit contributions to the Funds; and (2) failing to permit and cooperate in an audit of its books and records.  *See generally* Compl.  Plaintiffs argue that such conduct subjects Defendant to liability under ERISA and the LMRA.  This Court agrees.

### A.    Failure to Remit Contributions

Plaintiffs allege that Defendant breached the CBA by failing to make required contributions to the Funds on behalf of its employees.  *See* Compl. ¶¶ 15, 31, 46.  A breach of a CBA based on a failure to make employee benefit contributions and payments is actionable under Section 301 of the LMRA.  *See, e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Genrus Corp.*, 20-cv-4980 (MKB) (RER), 2021 WL 4755704, at *2 (E.D.N.Y. Aug. 16, 2021), *report and recommendation adopted*, 2021 WL 3928952 (E.D.N.Y. Sept. 2, 2021) (collecting cases); *Gesualdi*

---

[4] *See* 29 U.S.C. § 1002(21).

*v. D & E Top Soil & Trucking Inc.*, 11-cv-5938 (NG) (MDG), 2013 WL 1729269, at *3 (E.D.N.Y. Mar. 26, 2013) (holding that defendant's failure to pay contributions when due was a breach of the CBA and, in turn, a violation of LMRA § 301(a)).

Here, the CBA obligates Defendant to make certain contributions to the employees' Welfare Fund and Retirement Fund. *See* Ramaglia Aff. Ex. A. Art. 17, 18; *see also* id. Art. 19. Plaintiffs allege that Defendant failed to make such contributions. *See* Compl. ¶¶ 15, 31. Such allegations suffice to state a claim under Section 301. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Loc. 15, 15a, 15c & 15d, Afl-Cio v. Trac Constr. Grp.*, 22-cv-1935 (ENV) (RER), 2022 WL 7810540, at *3 (E.D.N.Y. Oct. 4, 2022), *report and recommendation adopted*, (E.D.N.Y. Dec. 21, 2022) ("[A]llegations that an employer failed to remit contributions according to the terms of an applicable collective bargaining agreement are sufficient to establish liability for breach of that agreement under the LMRA."); *Trs. of the Loc. 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, 16-cv-318 (SJ) (SJB), 2018 WL 4268907, at *4 (E.D.N.Y. Aug. 8, 2018), *report and recommendation adopted*, 2018 WL 4266038 (E.D.N.Y. Sept. 5, 2018) (holding that the defendants were liable under the LMRA for failing to make contributions to the funds, as required under the applicable collective bargaining agreement).

These very allegations also amount to a violation of ERISA Section 515 of, which provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145; *see Flanagan v. Marco Martelli Assocs., Inc.*, 13-cv-6023 (ADS) (AKT), 2015 WL 1042279, at *8 (E.D.N.Y. Mar. 9, 2015) (noting that, under Section 515, "employers are required to pay fringe benefit contributions pursuant to an effective collective bargaining agreement"). To establish a violation of Section 515, Plaintiffs must show that Defendant is (1)

an employer, (2) bound by a CBA that required payment of contributions, who (3) failed to make those contributions. *See Health & Welfare Fund of the United Food & Com. Workers Loc. 2013, AFL-CIO by Carotenuto v. Precision Abstract, LLC*, 16-cv-4690 (AMD) (SMG), 2017 WL 4325713, at *3 (E.D.N.Y. May 19, 2017) *report and recommendation adopted*, 2017 WL 4296740 (E.D.N.Y. Sept. 26, 2017).

Here, Plaintiffs allege that Defendant is an employer within the meaning of ERISA, and that the Funds are employee benefit plans as defined by ERISA. *See* Compl. ¶¶ 5, 10. Plaintiffs also allege that the CBA obligated Defendant to make benefit contributions, and that it failed to do so. *Id.* ¶ 13. In the default judgment context, such an allegation, taken as true, suffices to state a claim under Section 515. *See Danzo Sanitation*, 2018 WL 4268907, at *3 (holding that the employer's failure to make contributions pursuant to a collective bargaining agreement "constitutes a violation of ERISA"); *Trs. of Pavers & Road Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Triple H. Concrete Corp.*, 15-cv-6687 (ARR) (VMS), 2018 WL 1178036, at *6 (E.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1175151 (E.D.N.Y. Mar. 6, 2018) (citations omitted).

### B.    Failure to Permit & Cooperate in Audit

Plaintiffs also allege that Defendant breached the CBA by failing to permit and cooperate in an audit of its books and records. Plaintiffs argue that they are entitled to such an audit under the CBA, as well as ERISA.

Indeed, both the CBA and the Policy require Defendant to submit to an audit of its records. Under the CBA, "the Trustees shall have the authority to have a certified public accountant audit the payroll, wage, and other relevant records of the Employer for the purpose of determining the accuracy of contributions to each respective fund." Ramaglia Aff. Ex. A. Art. 19 ¶ 5. Under the

12

Policy, the Trustees have the "right to audit all the books and records of [Defendant], including but not limited to payroll ledgers, federal and state tax returns, IRS Form 941s and such other books and records of [Defendant] that are necessary in order for the auditors to ascertain accuracy, completeness and timeliness of such [Defendant] contributions to the Funds."  *Id.* Ex. B. § 1 ¶ 2.

Additionally, under ERISA, employers are obligated to maintain certain books and records so that employee benefit plans can review them to determine whether contributions are due.  *See* 29 U.S.C. § 1059(a)(1) ("[E]very employer shall . . . maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees."); *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 347 (E.D.N.Y. 2009) (holding defendant liable under ERISA for failure to maintain records).

Plaintiffs allege that Defendant "has failed and refused to allow a complete audit by the Funds for the period of July 1, 2019, through July 31, 2022."  Compl. ¶ 25; *see id.* ¶ 41 ("The failure to permit a complete audit has injured the funds . . . ").  As such, Plaintiffs have established Defendant's liability for failing to permit and cooperate in an audit of its records.  *See Trs. of Metal Polishers Loc. 8a-28a Funds v. Kenny Building Servs., Inc.*, 19-cv-5120 (ENV) (PK), 2020 WL 13158289, at *5 (E.D.N.Y. Nov. 23, 2020), *report and recommendation adopted*, (E.D.N.Y. Jan. 8, 2021).

## IV.     DAMAGES, COSTS, & OTHER RELIEF

As Plaintiffs have established Defendant's liability, this Court turns to evaluate damages. Plaintiffs seek various damages, costs, and other relief, which include:

- $56,962.01, the principal amount of benefit contributions due for the period of July 1, 2019, through July 31, 2022;

- $23,143.75 in interest calculated at 9% per annum;

- $11,992.40 in liquidated damages calculated at 20% of the principal amount;

- $37,778.09, the union assessments due for the period of July 1, 2019, through July 31, 2022;

- $3,870.00 in attorneys' fees;

- $8436.25 in audit costs; and

- $479.00 in court costs and disbursements.

*See* Statement of Damages.  In total, Plaintiff seeks $145,661.50.  *See id.*  This Court will assess each requested category of damages and costs.

### A.    Court Ordered Audit

At the outset, this Court notes that Plaintiffs' Complaint seeks a court order requiring Defendant to permit and cooperate in an audit of Defendant's books and records for the period of July 1, 2019, through July 31, 2022.  *See* Compl. Second & Fourth Claim for Relief (a).  However, Plaintiffs appear to have abandoned that request, as their memorandum of law does not mention such a request, and their proposed default judgment order does not include such an order.  *See* Pls.' Mem. Law in Supp.; Kugielska Aff. Ex. D., ECF No. 12-4.  As a practical matter, the Funds have already conducted an audit upon which they base their damages request, and for which they are seeking costs.  *See* Moss Aff. ¶ 2; *id.* Ex. A, ECF No. 14-1.  As such, this Court sees no reason to order another audit at this time.  Should Plaintiffs decide to renew their request for a court order requiring Defendant to permit and cooperate with an audit, Plaintiffs should brief the issue as to why an additional audit would be necessary.

### B.    Principal Amount of Benefit Contributions

Plaintiffs base their damages request on an audit conducted by Patrick Moss, a certified public accountant.  *See generally* Moss Aff.  "[C]ourts in this District have consistently found that an audit report is sufficient to support a claim for damages."  *Trs. of Laborers Loc. Union No. 1298 of Nassau & Suffolk Cntys. Benefit Funds v. Sitework Mgmt., Inc.*, 206 F.Supp.3d 790, 796

(E.D.N.Y. 2016).  Courts have further "found it appropriate to rely on an audit or an auditor's opinion to prove that defendant employers did not make required contributions to funds."  *Trs. of the Loc. 813 Ins. Tr. Fund v. All Cnty. Funeral Serv., Inc.*, 18-cv-737 (ENV) (RER), 2019 WL 5088285, at *3 (E.D.N.Y. Aug. 7, 2019), *report and recommendation adopted*, 2019 WL 5087097 (E.D.N.Y. Oct. 10, 2019) (citations and quotations omitted); *see Gesualdi v. Fortunata Carting Inc.*, 5 F. Supp. 3d 262, 273 (E.D.N.Y. 2014) (awarding requested unpaid contribution amount where audit reports, worksheets, and declarations of auditor explained the basis for results that could be verified by the Court).  However, "this is true only when the audit report contains sufficient information to enable the Court to determine the amount of delinquent contributions." *All Cnty. Funeral Serv., Inc.*, 2019 WL 5088285, at *3 (citation and quotations omitted).

Here, according to Moss, "the payroll audit of Defendant's books and records for the period July 1, 2019 through July 31, 2022 uncovered a principal benefit contributions delinquency amount of $59,962.01."  Moss Aff. ¶ 3.  Moss explains that his payroll audit analyzes and itemizes: "the deficiencies owed to each of the Funds for the relevant period; the number of unreported hours that the Employer owes contributions for each year of the relevant period; and the individual members of the Union that the deficient benefit hours and amounts correspond to for the relevant period."  *Id.*

Upon review of the audit, this Court notes that there is a one cent discrepancy between the calculations on the second page of the audit report, which show the deficiency amount adding up to the requested $59,962.01, and the third page of the audit report, in which the numbers listed add up to $59,962.0**2**, rather than the listed $59,962.0**1**.  *See id.* Ex. A.  However, as this discrepancy is only one cent, possibly due to a typographical error, and Plaintiffs are requesting the lower of the two amounts, this Court concurs with Moss's findings.  Plaintiffs' requested damages are

otherwise made with "reasonable certainty" based on the remainder of the audit report. This Court thus recommends awarding Plaintiffs $59,962.01 as the principal amount owed in benefit contributions. *See Nat'l Convention Servs.*, 2025 WL 2253741, at *4 ("Based on the Court's independent review of these documents, the Court finds that they provide a sufficient basis from which to evaluate the fairness of the requested damages." (citation and quotations omitted)).

## C. Interest

Plaintiffs also request interest owed on the unpaid benefit contributions. *See generally* Moss Aff. Ex. A. Courts can "award prejudgment interest to a successful ERISA claimant, and that decision . . . is committed to the sound discretion of the district court." *Trs. of Building Trades Educ. Benefit Fund v. Romero Elec. LLC*, 19-cv-3515 (DRH) (AYS), 2021 WL 3604811, at *7 (E.D.N.Y. July 19, 2021), *report and recommendation adopted*, 2021 WL 3603613 (E.D.N.Y. Aug. 13, 2021) (citation omitted). The amount of interest due for unpaid contributions must be "determined by using the rate provided under the plan, or, if none, the rate prescribed by section 6621 of the Internal Revenue Code." 29 U.S.C. § 1132(g).

Here, the Policy states, "[i]nterest shall accrue on delinquent contributions from the due date at the rate nine (9%) per annum." Ramaglia Aff. Ex. B. § 5 ¶ 1. As such, Moss calculated interest at a 9% rate compounded annually on the deficiency amount. *See* Moss Aff. ¶ 4. Upon Moss's review of Defendant's books and records, he determined that "Defendant owes interest for the years 2019 ($1,309.34); 2020 ($3,491.22); 2021 ($5,185.90); 2022 ($6,295.35); and 2023 ($6,861.94) all in the total sum of $23,143.75." *Id.* Moss provides, "[a]n example of how interest is calculated is as follows: for the year 2019, the pro-rated interest rate of nine percent (9%) per annum is multiplied by $29,096.79, which equals the interest owed for the year 2019 in the sum of $1,309.34," and that each year's interest was calculated in the same way through December 31,

2023. *Id.* He further notes that, "[a] pro-rated interest rate in the amount of four and a half percent (4.5%) per annum was applied for the year 2019 to account for the audit beginning six (6) months into 2019. The nine percent (9%) per annum interest rate was pro-rated by dividing it in half to reflect a four and a half percent (4.5%) per annum interest rate, which was applied to the year 2019." *Id.* n.2. As the information in the audit supports Moss's findings, this Court recommends awarding the requested $23,143.75 in interest on the unpaid benefit contributions. *See Nat'l Convention Servs.*, 2025 WL 2253741, at *4 (awarding interest on unpaid contributions).

### D.  Liquidated Damages

Plaintiffs also request liquidated damages. *See generally* Moss Aff. Ex. A.  Under ERISA, in addition to the unpaid contributions and the interest, the court shall award "an amount equal to the greater of . . . interest on the unpaid contribution, or . . . liquidated damages provided for under the plan in an amount not to exceed 20 percent." 29 U.S.C. § 1132(g)(2)(c)(i–ii).  Under the Policy, "[i]f the delinquent contributions are not received in the Fund Office when due, the Board may assess liquidated damages at the rate of 20 (20%) percent of the principal amount due."  Ramaglia Aff. Ex. B. § 5 ¶ 2.

According to Moss, "liquidated damages are calculated by multiplying the principal contributions delinquency amount of $59,962.01 by the liquidated damages rate of twenty percent (20% ), which equals $11,992.40."  Moss. Aff. ¶ 5.  This Court concurs with Moss's calculation.  However, as the statute calls for the Court to award the greater of either liquidated damages not exceeding 20%, or the interest amount owed, this Court recommends awarding an additional $23,143.75 for interest on the unpaid benefit contributions instead of the 20% liquidated damages amount. *See Sullivan v. Champion Elec. Mech. Builders Corp.*, 18-cv-5618 (ENV) (RER), 2020

17

WL 9814085, at *8 (E.D.N.Y. Feb. 25, 2020), *report and recommendation adopted*, (E.D.N.Y. Mar. 21, 2020) (awarding the greater of the two amounts).

### E.    Union Assessments

Plaintiffs also seek to recover unpaid union assessments due for the period of July 1, 2019, through July 31, 2022.  Moss explains that "[t]he payroll audit of the Defendant's books and records for the period July 1, 2019 through July 31, 2022 uncovered a union assessments delinquency amount of $37,778.09," which includes "an overtime wage differential in the amount of $36,677.76, reflecting the Defendant's incorrect application of the regular hour wage rate instead of the overtime wage rate, and the union dues based on that differential in the amount of $1,100.33."  Moss Aff. ¶ 7; *see* Azzopardi Aff.; *see also* Ramaglia Aff. Ex. A. Art. 4, 26, 39.

In reviewing Moss's audit, this Court again notes a one cent discrepancy between Moss's calculated overtime differential of $36,677.76, and the amount listed within the audit report itself on the page entitled, "Summary of Overtime Wage Differential for houses worked in excess of 40 hours per week."  *See* Moss. Aff. Ex. A.  There, the total amounts listed for each year add up to $36,677.7**7**, rather than $36,677.7**6**.  *See id.*  As this discrepancy is only one cent, possibly based on a typographical error, and Plaintiffs are requesting the lower of the two amounts, this Court recommends awarding union assessments of $37,778.09.  *See Trs. of the Pavers & Road Builders Dist. Council Welfare, Pension, & Annuity Funds v. Toros Brothers Constr. Corp.*, 24-cv-537 (FB) (MMH), 2025 WL 819918, at *7 (E.D.N.Y. Mar. 16, 2025), *report and recommendation adopted*, (E.D.N.Y. Mar. 31, 2025) (awarding union assessments).

### F.    Attorneys' Fees

Plaintiffs also seek attorneys' fees, on behalf of Lauren M. Kugielska, in the amount of $3,870.00 for 12.9 hours of work at a $300 hourly rate.  Kugielska Aff. ¶ 21.  ERISA allows for

an award of reasonable attorneys' fees and costs.  *See* 29 U.S.C. § 1132(g)(2)(D).  Under the Policy, "[a]ttorneys' fees shall be due to the Funds from a delinquent Employer at the hourly rate charged to the Funds for such services, for all time spent by Legal Counsel in collection efforts."  Ramaglia Aff. Ex. B. § 5 ¶ 3.

District courts have discretion to determine the reasonable amount to award in attorneys' fees.  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Concrete Indus. One Corp.*, 22-cv-6080 (ENV) (TAM), 2023 WL 7390362, at *9 (E.D.N.Y. Aug. 9, 2023), *adopted sub nom. by Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Concrete Indus. One Corp.*, 22-cv-6080 (ENV)(TAM), 2023 WL 6969943 (E.D.N.Y. Oct. 23, 2023).  In determining the reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed, and then determine the reasonableness of the hours expended by counsel.  *See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 238 (E.D.N.Y. 2025).

To determine a reasonable hourly rate, the court considers "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  *Cruz v. Loc. Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotations omitted).  The "community" is the "district in which the reviewing court sits."  *Scharff*, 2016 WL 3166848, at *4 (*quoting Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011)).  In the Eastern District, reasonable rates currently range from "$450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals."  *Rubin*, 763 F. Supp. 3d at 244.

The fee applicant has the burden of justifying the requested rate as reasonable.  *See Scharff*, 2016 WL 3166848, at *4.

Here, Attorney Kugielska affirms that she was admitted to practice in this Court in 2014. Kugielska Aff. ¶ 21.  Although she does not technically specify whether she is a partner or associate, she states that she "acted as lead counsel with court filings" on this case, and that the "customary rate" for associates at her firm is $300 per hour.  Given that Plaintiff has been practicing in this Court for approximately 11 years, and $300 is at the bottom of the range for reasonable senior associate rates in this District, Attorney Kugielska's $300 hourly rate is reasonable.  *See Toros Brothers Constr.*, 2025 WL 819918, at *9 (finding as reasonable, in a similar case, a $333 hourly rate for attorneys who graduated law school in 2016 and 2018).

As for the reasonableness of the hours expended, Attorney Kugielska submitted time records for 12.9 hours of work, all of which related to bringing of this case, submitting proof of service with the Court, obtaining an entry of default, and moving for default judgment.  *See* Kugielska Aff. ¶ 23.  After a review of these records, this Court finds such billed activities to be "reasonable and not excessive, redundant, or unnecessary."  *Toros Brothers Constr.*, 2025 WL 819918, at *10.  This Court further finds that the total hours expended are a reasonable number of hours expended in ERISA cases involving a default judgment.  *Id.* (finding 46.8 hours of work reasonable in similar cases); *see Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp.*, 20-cv-1834 (FB) (SJB), 2022 WL 584536, at *10 (E.D.N.Y. Feb. 3, 2022), *report and recommendation adopted*, 2022 WL 580959 (E.D.N.Y. Feb. 24, 2022) (awarding 39.4 hours of work in an ERISA default judgment); *Gesualdi v. Torretta Trucking Inc.*, 10-cv-1249, 2012 WL 1102803, at *9 (E.D.N.Y. Mar. 12, 2012), *report and recommendation adopted*, 2012 WL 1103179

(E.D.N.Y. Apr. 2, 2012) (finding "22.8 hours at attorney rates and 6.3 hours at paralegal rates to be reasonable" in an ERISA default judgment action); *Trs. of the Pavers & Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Base Constr. Corp.*, 16-cv-4068, 2017 WL 3017187, at *5 (E.D.N.Y. June 20, 2017) (finding that 22.95 hours of attorney work and 4.5 hours of paralegal work were reasonable in an ERISA default litigation).

Accordingly, this Court recommends awarding the requested $3,870.00 in attorneys' fees.

### G.    Audit Costs

Plaintiffs also ask the Court to award audit fees.  In his sworn affidavit, the auditor confirmed that audit fees totaled $8,436.25.  Moss Aff. ¶ 6.  Although somewhat confusing as written, the Policy provides that, "auditors' fees shall be due to the Funds from a delinquent Employer in the event a deficiency is determined by the Fund Auditors, is greater than five percent (5%) of the contributions paid for the period audited."  Ramaglia Aff. Ex. B. § 5 ¶ 4.

While ERISA "does not expressly provide compensation for audit fees, courts have generally allowed [such] recovery," *Tr. of the Loc. Tile Indust. Welfare Fund v. Caesar Max Tile Corp.*, 13-cv-924 (RRM) (VMS), 2014 WL 991723 at *11 (citation omitted), as the statute permits the court to award "such other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2)(E).  This Court thus recommends awarding Plaintiffs $8,436.25 in auditor's fees.

### H.    Court Costs & Disbursements

Plaintiffs also seek $400.00 in filing fees, and $79.00 in process server fees.  "In a successful action to recover delinquent contributions, an award of reasonable costs is mandatory, and courts will generally award the plaintiff '[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients.'"  *Masino*, 2010 WL 415286 at *5 (quoting *Trs. Of*

21

the *Road Carriers Loc. Welfare Fund v. Goldberg*, 8-cv-884 (RRM) (MDG), 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)).  Additionally, the Policy provides:

> All costs actually incurred in court actions for collection of delinquent contributions or to enforce the Boards' right to audit the Employer's payroll records shall be due to the Funds from the delinquent Employer, including, but not limited to, the cost of the court filing fees, fees for service of process, travel, copying charges, postage, expert fees, and such other costs as would be charged to the Board.

Ramaglia Aff. Ex. B. § 5 ¶ 5.

Here, the requested costs are reasonable compared to similar cases in this District.  *See e.g.*, *Tri State Constr. & Masonry Corp.*, 2017 WL 9485701, at *8 (finding reasonable $647.21 for court filing fees, postage, and related costs); *Gesualdi*, 5 F. Supp. 3d at 282 (finding reasonable $890 in court filing, service of process, and deposition transcript fees and the costs of photocopying and postage).

However, Plaintiffs only ask for $400 for the filing fee, rather than $405, despite that the docket indicates that Plaintiffs paid $405.  *See* Compl. Docket Entry.  Also, Plaintiffs' memorandum of law requests reimbursement for $400 "paid to the Clerk of the Court of the S.D.N.Y." rather than that of the E.D.N.Y.[5]  In any event, as filing fees are recoverable in ERISA cases "without supporting documents if verified by the docket," this Court recommends awarding Plaintiffs $405 in filing fee costs.  *Trs. of the Pavers & Road Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp.*, 20-cv-1834 (FB) (SJB), 2022 WL 584536, *10 (E.D.N.Y. Feb. 3, 2022), *report and recommendation adopted*, 2022 WL 580959 (E.D.N.Y. Feb. 24, 2022).

---

[5] Plaintiffs and Plaintiffs' Counsel have made this precise mistake before.  *See Kenny Building Servs., Inc.*, 2020 WL 13158289, at *7 ("Plaintiff requests $467 in costs, including $400.00 for the filing fee (mistakenly noted as "paid to the Clerk of the Court of the S.D.N.Y.")).

Plaintiffs' requested $79 process server fee, however, must be supported by documentation to be recovered. *See id.* Plaintiffs have, indeed, submitted such a receipt, and thus this Court further recommends awarding Plaintiffs $79 in process server fees. *See* Kugielska Aff. Ex. C, ECF No. 12-3.

## I.   Post-Judgment Interest

"The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961). Accordingly, the Court respectfully recommends that Plaintiffs be granted post-judgment interest to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment at the statutory rate. *See* 28 U.S.C. § 1961.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court respectfully recommends that the District Court GRANT the Motion and award the damages and costs described herein, totaling $156,817.85 plus post-judgment interest.

## <u>OBJECTIONS TO THIS REPORT AND RECOMMENDATION</u>

Under 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, 15-cv-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_/s_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
August 29, 2025.